IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARY A. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00947-MDH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of her application for Social Security Disability Insurance (SSDI) under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*., and Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq*. Plaintiff has exhausted her administrative remedies and the matter is now ripe for judicial review. After carefully reviewing the files and records, the Court finds the decision of the Commissioner is not supported by substantial evidence in the record as a whole and the decision is therefore **REVERSED** and **REMANDED**.

## I. BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 44-year old woman who applied for SSI and SSDI benefits based on alleged impairments of diabetes, heart problems, high blood pressure, arthritis, and numbness in hands. The ALJ found Plaintiff suffered from the following severe impairments: diabetes, coronary artery disease status-post coronary artery bypass grafting, hypertension, bilateral carpal tunnel syndrome, degenerative disc disease, and variously diagnosed mental impairments including recurrent major depressive

1

disorder, polysubstance abuse in partial remission, anxiety disorder not otherwise specified, rule out posttraumatic stress disorder (PTSD) and rule out borderline personality disorder. The ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment.

Between June 2, 2009 and November 30, 2011, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> The claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except she was limited to frequent gripping and handling tasks; could perform no more than simple work; and while she was able to interact appropriately with coworkers and supervisors, she would have done best if allowed to work independently with only casual interactions required.

In light of the above RFC and Plaintiff's age, education, and work experience, the ALJ found Plaintiff was not disabled between June 2, 2009 and November 30, 2011 because she could perform jobs that existed in significant numbers in the national economy, including representative occupations of assembler and driver. Between December 1, 2011 and June 24, 2013, the ALJ found Plaintiff retained the above residual functional capacity but with an additional limitation that "the claimant will be off task 25% of the day and/or will miss three or more days of work per month." Based on that RFC, including the additional limitation, the ALJ found Plaintiff was disabled because there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.

Plaintiff argues on appeal that the ALJ erred in finding Plaintiff not disabled for the period between June 2, 2009 and December 1, 2011 because: (1) the ALJ's RFC is not supported by substantial evidence in the record as a whole, (2) the ALJ erred as a matter of law in failing to consider the Missouri Department of Social Services ("MDSS") disability determination, and (3) the ALJ failed to sustain the Commissioner's burden at Step Five.

2

## II. STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007).

## III. DISCUSSION

After full and careful review of the records and briefs, the Court finds the ALJ erred in two respects warranting reversal.

First, the ALJ erred as a matter of law by failing to address the MDSS determination that Plaintiff was disabled back to 2009 for purposes of Missouri Medicaid. Although a disability determination by another governmental agency is not binding on the Commissioner, such a

3

decision should be explicitly considered and addressed.  *See Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998).  Social Security Ruling 06-3p states that "evidence of a disability decision by another government or nongovernmental agency cannot be ignored and must be considered" and "the adjudicator should explain the consideration given to these decisions[.]"  Social Security Ruling (SSR) 06-3p, 71 Fed. Reg. 45,593 (Aug. 9, 2006).  Here, Plaintiff submitted post-hearing evidence that showed she was found disabled for purposes of Missouri Medicaid back to 2009.  *See* Ex. 26E.  The ALJ included that evidence in the list of exhibits attached to her decision, *see* Tr. 45, but she did not otherwise cite, address, or discuss the state agency's finding.  Contrary to the Commissioner's assertion, the Court finds such silence constitutes reversible error.  *See Morrison*, 146 F.3d at 628; *see, e.g., Cranmer v. Colvin*, No. 4:13-CV-00693-NKL, 2014 WL 2828313, at *3 (W.D. Mo. June 23, 2014); *Hixon v. Colvin*, No. 4:12-CV-1288-DGK, 2013 WL 6502169, at *2 (W.D. Mo. Dec. 11, 2013) (noting that MDSS "utilizes an almost identically worded standard to determine disability").[1]

Second, the Court finds the RFC is not supported by substantial evidence in the record as a whole.  The disability period at issue before the ALJ extended from June of 2009 to June of 2013.  As an initial matter, the Court agrees with Plaintiff that the date and rationale used by the ALJ to further subdivide that period is not supported by substantial evidence in the record as a

---

[1] The Commissioner argues any error is harmless because the record does not contain the initial notice that Plaintiff was found eligible for Medicaid benefits, nor does it contain any information as to how that determination was made or upon what it was based.  It is true that the Eighth Circuit held reversal was not required where the ALJ failed to mention a VA disability determination but the ALJ nonetheless addressed and discredited the various medical records upon which the VA disability determination was based.  *See Baker v. Colvin*, 620 F. App'x 550, 555 (8th Cir. 2015); *Pelkey v. Barnhart*, 433 F.3d 575 (8th Cir. 2006).  Here, by contrast, there is no information in the record concerning what evidence the state agency considered in making its decision.  Although the Commissioner attempts to place the burden on Plaintiff to point to specific evidence relied upon in rendering the state agency decision that was not considered by the ALJ, the Court finds such reasoning would allow the harmless error exception to effectively swallow the rule provided in SSR 06-3p.  *See generally Cranmer*, 2014 WL 2828313, at *3.  Moreover, that burden would surely be unjust where, as here, the documents underlying the MDSS decision were not available due to no fault of Plaintiff.  *See* Tr. 422 (letter from MDSS explaining such information is not available because "we were in the process of changing from a legacy system to the current FAMIS system and she was found eligible back in 2009").  Accordingly, this Court agrees with Judge Laughrey and Judge Kays that the Court "cannot dismiss the ALJ's failure to discuss the state agency determination as a mere deficiency in opinion writing technique."

4

whole. The ALJ explained that "beginning on December 1, 2011, the claimant's allegations regarding her symptoms and limitations are sufficiently credible to support disability." Upon review of the record as a whole, the Court finds there is simply no evidence in the record to support a distinction in the evidence between the time period prior to December 1, 2011 and the time period after December 1, 2011. Contrary to the ALJ's notation, Plaintiff underwent consistent treatment with mental health professionals, including medication management, therapy, and case management, both prior to and after December 1, 2011. Both before and after that date, Plaintiff's mental health improved and deteriorated at certain times, in large part due to situational factors and changes in medication. Both before and after that date, Plaintiff reported suicidal thoughts. Both before and after that date, Plaintiff sought out employment. Although the ALJ is correct that Plaintiff's GAF scores "have remained at 45 and 43 since that time" the Court notes that Plaintiff's medical records indicate Plaintiff's condition did not significantly deteriorate at or around "that time" but, rather, Plaintiff began seeing a new mental health provider in approximately January of 2012 which is likely the reason for different and lower GAF scores. In sum, the ALJ provided no good reason supported by substantial evidence in the record as a whole to find Plaintiff non-credible prior to December 2011 but credible afterwards.

Furthermore, the functional limitations adopted by the ALJ with respect to Plaintiff's bilateral carpal tunnel syndrome are not supported by substantial evidence in the record as a whole. The record contains only one medical opinion regarding the functional limitations arising from Plaintiff's physical impairments and that opinion was issued by a consultative examiner in September of 2009. In July of 2010, an electrodiagnostic evaluation showed that Plaintiff was diagnosed with bilateral carpal tunnel syndrome for the first time and noted it "is very severe on the right and severe on the left." Plaintiff's primary care physician thereafter provided Plaintiff

5

wrist splints and gave her a phone number to arrange carpal tunnel surgery. As noted by the ALJ, the record reflects that Plaintiff never set up a meeting to undergo carpal tunnel surgery. The Court notes, however, that Plaintiff reported to her medical care providers that she believed carpal tunnel surgery was not covered by her insurance. At the hearing, Plaintiff testified that she attempted to work two separate jobs in 2012 but was terminated because she could not perform the functions of those jobs due to pain in her hands and wrists. The ALJ ultimately found "[Plaintiff's] carpal tunnel would reasonably be expected to have caused the claimant to have difficulty with occupations require [sic] constant use of her hands" and "because of her carpal tunnel syndrome, the undersigned has limited the claimant to occupations that would not have required more than frequent gripping and handling tasks." The Court finds there is no medical evidence in the record to support residual functional capacity found by the ALJ and an ALJ may not deduce his own opinions from the medical records. *See generally Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The only medical opinion in the case regarding Plaintiff's physical RFC was issued ten months prior to Plaintiff's diagnosis of severe bilateral carpal tunnel syndrome, two years prior to the cutoff date determined by the ALJ, and four years prior to the hearing. The ALJ cites no other medical evidence in the file after July 2010 that addresses functional limitations arising from Plaintiff's severe bilateral carpal tunnel syndrome such that the RFC is otherwise supported by substantial medical evidence. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Accordingly, the ALJ should have sought additional evidence/opinion on that issue. This is especially important where, as here, the VE indicated that a limitation to "occasional" rather than "frequent" gripping and handling tasks would eliminate jobs available to Plaintiff. *See* Tr. 93.

Finally, the Court finds the mental RFC is not supported by substantial evidence in the record as a whole. Again, the only medical opinions concerning Plaintiff's mental RFC were issued in October of 2009, January of 2010, and February of 2011, and all of those opinions were issued more than nine months prior to the cutoff date set by the ALJ and at least three years prior to the time of the disability hearing. Within the nine months between the most recent opinion and the cutoff date, the medical records indicate Plaintiff's mental condition began deteriorating in April of 2011, she attempted suicide on June 30, 2011, she was hospitalized for inpatient psychiatric treatment from July 8, 2011 to July 14, 2011, and after her release she continued to report suicidal thoughts, anxiety, depression, and loss of interest until she had a medication change in August of 2011. Although the ALJ acknowledged this period and concluded it simply represented an episode of decompensation, the Court finds such a determination is better left to psychiatrist or psychologist who specializes in the diagnosis and treatment of mental health disorders and who is better able to assess the longitudinal picture of Plaintiff's disease in light of the nature and course of the specific disorder at issue.[2] The ALJ accounted for Plaintiff's mental impairments by limiting her to "simple" work with only casual interactions with others, relying on the opinion of a consultative psychologist who evaluated Plaintiff in February of 2011. In this case, considering the nature of the disease at issue, the multiple mental healthcare providers involved, and the significant deterioration of Plaintiff's mental health condition in 2011, the Court finds the ALJ should have sought additional opinion evidence regarding Plaintiff's mental RFC at the time of the cutoff date and/or the hearing.[3] The Court finds the ALJ's mental RFC

---

[2] This is especially true in light of the continuing "ups" and "downs" in Plaintiff's mental condition after December 2011 as reflected in the treatment records in this case.

[3] The Court notes that, as of December 2011, without the benefit of any additional medical opinion from a psychiatrist or psychologist, the ALJ found Plaintiff was appropriately limited to occupations that would allow her to be off task 25% of the time and/or miss three days of work per month.

7

was based on stale medical opinions and the other medical evidence in the record does not sufficiently fill the gap such that the mental RFC is supported by substantial medical evidence.

## IV. CONCLUSION

In sum, the Court finds the Commissioner's decision is not supported by substantial evidence in the record as a whole and **REVERSAL** and **REMAND** is required in accordance with this opinion.

**IT IS SO ORDERED**.

Dated: March 16, 2016                              */s/ Douglas Harpool*
                                                   **DOUGLAS HARPOOL**
                                                   **UNITED STATES DISTRICT JUDGE**